United States District Court
Southern District of Texas
**ENTERED**
November 28, 2016
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

| | | |
|---|---|---|
| SONJA MAYBERRY, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-15-330 |
| | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMIN., | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION

Before the Court, upon referral from the District Court Judge, are competing Motions for Summary Judgment filed by Plaintiff Sonja Mayberry (Dkt. No. 17) and Defendant Carolyn W. Colvin, the Commissioner of the Social Security Administration (Dkt. Nos. 18, 19). The Motions pertain to Mayberry's appeal of the denial of her applications for Social Security Benefits. Having considered the motions, the administrative record[1] and applicable law, the Court **RECOMMENDS**, for the reasons discussed herein, that Mayberry's Motion be **DENIED**, that the Commissioner's Motion be **GRANTED**, and that the Commissioner's decision be **AFFIRMED**.

## I. BACKGROUND

On August 31, 2012, Plaintiff Sonja Javon Mayberry (Mayberry) filed applications with

---

[1] The administrative record was filed electronically. (Dkt. No. 7).

the Social Security Administration (SSA), seeking disability insurance benefits (DIB) and supplemental security income (SSI). (Transcript (Tr.) 218-221, 222-228). In her application, Mayberry alleged that her disability began on August 21, 2012 due to rheumatoid arthritis and obesity. (Tr. 218-221, 222-228). Mayberry's applications were denied initially and on reconsideration. (Tr. 111-119, 120-128, 129, 130, 153, 154). She appealed the denial and requested a hearing before an Administrative Law Judge (ALJ) to review the decision. (Tr. 164-165, 166-169).

On March 26, 2014, a hearing was held before ALJ Patricia C. Henry in Houston, Texas. (Tr. 65-110). During the hearing, the ALJ heard testimony from Mayberry, who was represented by counsel, from Mayberry's counselor, Rick Ertell, and from a vocational expert (VE). (Tr. 65-110). Thereafter, on August 15, 2014 the ALJ issued a decision in which she initially determined that Mayberry met the insured status requirements of the Social Security Act through December 31, 2016, and that she had not engaged in substantial gainful activity since June 1, 2013, the amended alleged onset date.[2] At Step 2 the ALJ found that Mayberry had the following severe impairments: inflammatory arthritis, morbid obesity and depression. (Tr. 44). At Step 3, the ALJ determined that Mayberry did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 45). The ALJ then determined that Mayberry had the residual functional capacity to perform sedentary work, as defined in the regulations, except with the following limitations:

> she would be precluded from climbing on ladders, ropes and scaffolds. She can engage in occasional climbing of stairs or ramps and frequent but not

---

[2] Based on Mayberry's testimony at the hearing, her attorney amended her alleged onset date to June 1, 2013. (Tr. 79).

2

> constant stooping and crouching. The claimant is further limtied to frequent but not constant gross manipulation. Mentally, the claimant is limited to occasional interaction with supervisors, coworkers and members of the general public. Furthermore, she is limited to unskilled work.

(Tr. 47). At Step 4, the ALJ determined that Mayberry was unable to perform her past relevant work. Finally, at Step 5, the ALJ determined that considering her age, education, work experience and residual functional capacity,[3] there were jobs that exist in significant number in the national economy that Mayberry could perform (*e.g.*, optical goods polisher, dowel inspector, bench hand/jewelry preparer). (Tr. 52-53). As such, the ALJ concluded that Mayberry was not disabled within the meaning of the SSA from June 1, 2013, through the date of the decision. (Tr. 53-54).

Mayberry appealed the ALJ's decision to the Appeals Council of the SSA's Office of Hearings and Appeals, however, in a letter dated September 22, 2015, the Appeals Council notified Mayberry that it declined to review the ALJ's determination (Tr. 2-6, 39-54), which rendered the ALJ's opinion the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). On November 20, 2015, Griffin filed the instant action seeking judicial review of the Commissioner's denial of her claims for DIB and SSI benefits. (Dkt. No. 1).

## II. APPLICABLE LEGAL STANDARDS & BURDENS

### A. Judicial Review

Judicial review of administrative decisions by the Commissioner are limited.[4] A federal

---

[3] The ALJ noted that Mayberry, who was born on December 13, 1978, was 33 years old; that Mayberry had a high school education and was able to communicate in English; and that, given her work experience, transferability of job skills was not relevant.

[4] Title 42, Section 405(g) limits judicial review of the Commissioner's decision as follows: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the

3

court reviews the Commissioner's denial of benefits only to ascertain whether (1) the final decision is supported by substantial evidence and (2) the Commissioner used the proper legal standards to evaluate the evidence. *Brown v. Apfel*, 192 F.3d 472, 473 (5th Cir. 1999); *see also, Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir.1995) (a court is tasked with "scrutiniz[ing] the record to determine whether it contains substantial evidence to support the Commissioner's decision"). Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). When reviewing an administrative decision, the court is not permitted to re-weigh the evidence, try the issues *de novo* or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988). Instead, conflicts in the evidence are for the Commissioner, not the court, to resolve. *Brown*, 192 F.3d at 496.

### B. Standards and Burdens

To be eligible for disability insurance benefits (DIB) or supplemental security benefits (SSI) the claimant must have a disability as defined in the Act.[5] *See* 42 U.S.C. §§1382(a), 1382c(a)(3)(A)-(C);20 C.F.R. §1505. A well-established five-step sequential process is utilized by the Social Security Administration to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see also, Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *see also*

---

pleadings, and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security with or without remanding the case for a rehearing" when not supported by substantial evidence.

[5] An income cap also exists for SSI benefits, but that is not relevant in the case at hand.

4

*Leggett*, 67 F.3d at 563 n.2; *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). The claimant has the burden to prove disability under the first four steps. *See Myers v. Apfel*, 238 F.3d 617, 619 (5th Cir. 2001). If the claimant successfully carries this burden, the burden shifts to the Commissioner in step five to show that other substantial gainful employment is available in the national economy, which the claimant is capable of performing. *See Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001).

## III. DISCUSSION

### A. ALJ Posed A Defective Hypothetical

In her first point of error, Mayberry contends that the ALJ posed a defective hypothetical to the VE because it did not include the ALJ's limitation of "frequent but not constant gross manipulation" contained in the ALJ's finding of Mayberry's residual functional capacity. (Dkt. No. 17 at 9-16). The Commissioner counters that Mayberry is mistaken and that the record reflects that the hypothetical the ALJ posed to the VE properly incorporated all the limitations found in the ALJ's RFC finding. (Dkt. No. 19 at 4-6).

Having carefully considered the administrative record in this case, the Court finds no support for Mayberry's contention.[6] Contrary to her claims, the transcript clearly reflects that the ALJ posed a number of hypotheticals to the VE and one expressly included the ability to perform sedentary work with the limitation of "frequent, but not constant gross manipulation." (Tr. 104-106). In particular, when discussing work performed at a sedentary level the transcript reflects:

---

[6] Notably, Mayberry does not argue that the ALJ's assessment of her RFC was incorrect.

> ALJ: Now, for the next hypothetical, an individual is limited to sedentary work. Occasional climbing stairs or ramps. Frequent, but not constant stooping and crouching. Avoid climbing on ladders, ropes, and scaffolds. Limited to occasional interaction with supervisors, co-workers, members of the general public, and unskilled work. Are there any jobs that such individual could perform?
>
> VE: In my opinion, an individual with a vocational profile as outlined in your hypothetical could perform a significant number of job titles that exist in significant numbers regionally and nationally. Examples, not an exhaustive listing, but examples of such would include what the DOT calls an optical good polisher, 713.684-038. Classified as sedentary with an SVP of 2. With regional incidence just above 1,200. National incidence just above 78,000. Number two is what the DOT calls a dowel inspector, 669.687-014. Classified as sedentary with an SVP of 2. With regional incidence just above 1,000. And national incidence just above 72,000. And number three is what the DOT calls a bench hand or jewelry preparer, P-R-E-P-A-R-E-R. 700.687-062. Classified as sedentary with an SVP of 2. With regional incidence just above 12,000. And national incidence just above 960,000.
>
> \* \* \*
>
> ALJ: Okay. Now, in addition to that sedentary hypothetical that I gave you, if an individual was also limited to frequent, but no constant gross manipulation, would that eliminate any of those jobs?
>
> VE: No.
>
> ALJ: Okay. And if an individual was limited to only occasional gross manipulation of items over five pounds, would that eliminate any of those jobs or reduce the numbers?
>
> VE: It would certainly not eliminate the job titles. And if it reduced the numbers, it would be no more than 10 percent of the numbers that I quoted.

(Tr. 104-106). Thus, lacking any support in the record, Mayberry's first point of error should be denied.[7]

---

[7] Although Mayberry argues that the ALJ did not elicit an explanation as to how a person limited to "occasional gross manipulation of items over five pound" could performs jobs that required frequent reaching, handling and fingering, her point is irrelevant because the ALJ's RFC finding did not include such a limitation. (Tr. 47). Nonetheless, as urged by the Commissioner, even if the ALJ had adopted this

6

### B. Evaluation of Subjective Symptoms

In her second point of error, Mayberry challenges the ALJ's evaluation of her subjective symptoms. More specifically, Mayberry argues that "the ALJ's decision [of her subjective symptoms] was influenced, in part, by her evaluation of [her] credibility, which is improper under SSR 16-3p." (Dkt. No. 17 at 16). The Commissioner maintains that the ALJ properly applied the rulings in affect at the time of the decision; that SSR 16-3p was not even in effect until well after the ALJ issued the decision in this case; and, even if the Ruling applied retroactively, it would not warrant remand because the ALJ properly evaluated Mayberry's subjective symptoms based on all the evidence in the record. (Dkt. No. 19 at 6-7). To place the issue into context, the Court begins its analysis with a discussion of the regulatory requirements in place for evaluating a claimant's subjective symptoms.

#### 1. The Two-Step Process

Under the regulations there is a two-step process for the evaluation of a claimant's reports of pain or other symptoms. See 20 C.F.R. §404.1529; 20 C.F.R. §416.929. The first step assesses whether objective medical evidence in the record demonstrates the existence of a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged."

---

restriction, Mayberry cannot show prejudice because the VE testified that such a reduction would reduce the jobs by 10%, which would still leave a significant number of jobs that a person with those limitations could perform. *See Lirley v. Barnhart*, 124 Fed. Appx. 283, 284 (5th Cir.2005) (in accordance with 42 U.S.C. §423(d)(2)(A) and 20 C.F.R. §404.1566, the court held 50,000 jobs in the national economy was a significant number); *see also, Doddy v. Comm'r, Soc. Sec. Admin.*, No. 12-cv-384, 2014 WL 1268567, at *7 (E.D.Tex.2014) (finding that 3,400 jobs in Texas and 61,000 jobs in the national economy represented a significant number); *Caronia v. Colvin*, No. 12-cv-595-Y, 2013 WL 5192904, at *7 (N.D.Tex.2013) (finding 2,000 to 3,000 jobs in Texas and 50,000 in the national economy sufficient); *Thompson v. Astrue*, No. 08-cv-1134-G, 2010 WL 2816677, at *7 (N.D.Tex.2010) (finding that 105,000 jobs in the national economy was sufficient); *Mercer v. Halter*, No. 00-cv-1257, 2001 WL 257842, at *6 (N.D.Tex.2001) (finding 500 jobs in Texas and 5,000 jobs nationwide sufficient).

7

20 C.F.R. §404.1529(b); 20 C.F.R. §416.929(b). This step requires a threshold showing that the claimant has a medical condition that could produce the pain the claimant allegedly suffers. At this step, a claimant only needs to show objective evidence of some condition that could reasonably be expected to produce the pain alleged, but not objective evidence of the pain itself.

Assuming an adequate showing is made, the ALJ proceeds to the second step. The second step requires the ALJ to evaluate the intensity and persistence of the symptoms, as alleged by the claimant, to determine the extent to which those symptoms affect the claimant's capacity to perform basic work activities. 20 C.F.R. §404.1529(c)(4); 20 C.F.R. §416.929(c)(4). It is not necessary that the claimed severity be proved by objective medical evidence. The claimant's subjective complaints of symptoms need not be accepted to the extent they are inconsistent with the available evidence, including the objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain alleged by the claimant.

In weighing a claimant's statements about the limiting effects of her symptoms, the ALJ is to consider all relevant evidence, including medical signs and laboratory findings, as well as the opinions of treating and non-treating medical sources, objective medical evidence, and other factors relevant to the claimant's symptoms such as daily activities; location, duration, frequency and intensity of pain and other symptoms; and measures taken (such as medication, treatment or home remedies) to alleviate those symptoms. 20 C.F.R. §404.1529(a), (c)(1-4); 20 C.F.R. §416.929(a), (c)(1-4). Ultimately, in determining the extent to which pain and other symptoms limit a claimant's ability to perform basic work activities, the ALJ considers the claimant's "statements about the intensity, persistence, and limiting effects of [her] symptoms," and evaluates

those statements "in relation to the objective medical evidence and other evidence." 20 C.F.R. §404.1529(c)(4); 20 C.F.R. §416.929(c)(4). When making this determination, the ALJ's decision should refer specifically to the evidence informing the ALJ's conclusion. *See Falco v. Shalala*, 27 F.3d 160, 163-64 (5th Cir. 1994) (recognizing that while the ALJ "must articulate reasons for rejecting the claimant's subjective complaints of pain" the court has declined to apply a "rigid approach"). Because an ALJ has the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990) (considerable deference should be afforded an ALJ's credibility assessment). It is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if her decision is supported by substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Thus, so long as the ALJ points to substantial evidence in support of her decision and adequately explains the reasons for her finding on the claimant's credibility, the court must uphold the ALJ's determination. 42 U.S.C. §405(g); *see Richardson v. Perales*, 402 U.S. 389 (1971).

### 2. Impact of Administrative Rulings on the Evaluation Process

Although not having the same force and effect as the regulations, the Social Security Administration issues rulings that are intended to provide guidance to ALJs in the evaluation process. *See Chrysler Corp. v. Brown*, 411 U.S. 281, 295-96 (1979) (recognizing that Social Security rulings lack the force of law, but acknowledging that they are persuasive); *Baty v. Barnhart*, 512 F.Supp.2d 881, 894 (W.D.Tex. 2007) (same).

In March 2016, the Social Security Administration issued Social Security Ruling 16-3P,

which provided guidance regarding how the SSA evaluates "statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." Soc. Sec. Admin., SSR 16-3P, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016). This Ruling superseded SSR 96-7p, which for decades provided guidance on this topic. Ruling 16-3p eliminated the use of the term "credibility" from the SSA's sub-regulatory policy which merely brought it in line with the long-standing regulations that did not employ the term. SSR 16-3P, 2016 WL 119029, at *1.

### 3. Retroactive Application of SSR16-3p

In this case, Ruling 16-3p was not issued until long after the ALJ rendered her decision and the Appeals Council denied review of the decision. It is well-established that, absent explicit language to the contrary, administrative rules do not ordinarily apply retroactively. *See, e.g., Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541-42 (6th Cir. 2007) ("We are not aware of any constitutional or statutory requirement that the Administration apply its [newly effective] policy interpretation rulings to appeals then-pending in federal courts, absent, of course, ex post facto or due process concerns not present here."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations."). Because the text of SSR 16-3p does not indicate the SSA's intent to apply it retroactively, the Court would be disinclined to do so. *See* SSR 16-3p, 2016 WL 1119029.

Nevertheless, when a new ruling represents a clarification, typically this does not raise

issues about retroactivity. *See Clay v. Johnson*, 264 F.3d 744, 749 (7th Cir. 2001) (stating that a clarifying rule "can be applied to the case at hand just as a judicial determination construing a statute can be applied to the case at hand," and does not raise issues of retroactivity); *see generally*, *Smolen v. Chater*, 80 F.3d 1273, 1281 n.1 (9th Cir. 1996) ("We need not decide the issue of retroactivity [as to revised regulations] because the new regulations are consistent with the Commissioner's prior policies and with prior Ninth Circuit case law ...."). Having reviewed the old and new rulings, it is evident that the change was mostly semantic and that Ruling 16-3p was designed to clarify rather than change existing law. *See Lockwood v. Colvin*, No. 15 C 192, 2016 WL 2622325, at *3 n.1 (N.D. Ill. May 9, 2016) (noting substantial consistency between the old and the new ruling in terms of the two-step process to be followed and the factors to be considered in the evaluation); *See, e.g., Burnstad v. Colvin*, Case No. 6:15-cv-00921-SI, 2016 WL 4134535, at 11 n.9 (D. Or. Aug. 2, 2016) (documenting differential treatment among district courts about whether SSR 16–3P should apply retroactively); *Dooley v. Comm'r of Soc. Sec.*, _Fed.Appx._, No. 16-5146, 2016 WL 4046777, at *5 n.1 (6th Cir. 2016) (noting that because SSR 16–3P did not alter the existing rule at issue in the case before the court, the court "need not reach the issue" of whether SSR 16–3P applies retroactively). Thus, the Court considers the ALJ's evaluation of Mayberry's subjective complaints in light of the clarification offered by SSR 16-3p.

### 4. Impact of SSR 16-3p

A review of the decision in this case, reflects that the ALJ set forth the applicable standards for consideration of a claimant's symptoms and dutifully applied the two-step process described above. In doing so, the ALJ's acknowledged at the first step that Mayberry's "medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 48).

The ALJ went on to conclude, however, that Mayberry's statements concerning the intensity, persistence and limiting effect of these symptoms could not be fully credited in light of the other evidence in the record, in particular the objective medical evidence and Mayberry's own reports of daily activities. (Tr. 47-52).

Mayberry insists, however, that the ALJ's analysis was based "solely upon intangible or intuitive notions" about her credibility and truthfulness. (Dkt. No. 17). In support of her contentions, Mayberry appears to suggest that the ALJ erred by ignoring the opinion of her treating doctor, but in the decision, the ALJ expressly acknowledged the opinion of Mayberry's treating doctor, Dr. Enrique Leal, who opined that Mayberry was unable to obtain or maintain gainful employment due to her physical and mental impairments. (Tr. 51). The ALJ did not err in giving little or no weight to this opinion for several reasons. Initially, it is well-established that "ultimate determinations of disability" are reserved for the Commissioner. *See Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995) (regardless of the opinions and diagnoses of medical sources, "sole responsibility for determining a claimant's disability status" rests with the ALJ). Additionally, consistent with the regulations, the ALJ declined to give any weight to Dr. Leal's opinion because it was not consistent with Mayberry's activities,[8] it was not consistent with the clinical and objective findings in his records, or the other evidence in the record. (Tr. 338-342, 346, 349-350, 352, 356, 360, 394-395, 418, 420, 432-436, 438-447, 454-460, 470, 514-516, 524-

---

[8] The ALJ documented Mayberry's daily activities demonstrating Mayberry's ability to engage in a wide variety of life's activities notwithstanding the presence of her severe obesity and rheumatoid arthritis. The ALJ concluded that these activities were "not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," and that overall, the evidence of record supports a finding that Mayberry can function in a competitive work environment, factoring in the functional limitations provided in the residual functional capacity to accommodate her severe impairments.

525, 536, 576). *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).

Mayberry also argues that the ALJ's conclusion runs contrary to the medical opinion of the consultative examiner, Dr. Culver. (Dkt. No. 17 at 20). This argument lacks merit. The record indicates that the ALJ used the medical information contained in the record and provided by the consultative examiner to determine Mayberry's RFC for work. (*See* Tr. 47, 49, 337-343, 515). Under the regulations and case law, the determination of RFC is the sole responsibility of the ALJ. *See Ripley*, 67 F.3d at 557. Moreover, despite her contentions to the contrary, the ALJ's determination of Mayberry's RFC for work incorporated (Tr. 47; 337-343) the limitations expressed by the consultative examiner into her determination of Mayberry's RFC. *See Moore v. Sullivan*, 919 F.2d 901, 905 (5th Cir.1990) (stating that ALJ has the responsibility to resolve conflicting medical opinions); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987) (stating that ALJ has the responsibility to resolve questions of credibility).

Next, Mayberry argues that the ALJ improperly played doctor when she acknowledged that Mayberry's laboratory test revealed an elevated Rheumatoid factor (Tr. 49, 519), but attempted to diminish the effect of this result by commenting that "Texas does not have long winters." (Tr. 50). Notably, the ALJ's observation concerning the climate in Texas was made in response to Mayberry's testimony that she experienced flare-ups when the weather was cold and rainy. (Tr. 50). Moreover, what Mayberry characterizes as the ALJ substituting her opinion is actually the ALJ properly, but flippantly, interpreting the medical evidence to determine her capacity to work.

Finally, Mayberry argues that no objective evidence supports the ALJ's finding that her medical impairments are amenable to treatment" and the finding that her subjective complaints had

13

improved. (Dkt. No. 17 at 21-22). The Court cannot agree. Substantial evidence exists in the record that supported the ALJ's finding that Mayberry's physical (Tr. 339-342, 360, 395, 432, 433, 515-516, 524) and mental impairments (Tr. 338, 394, 420, 470, 514, 525, 536) were amenable to treatment and that, when followed, her subjective complaints improved. (Tr. 346, 349, 350, 352, 356, 360, 418, 432-436, 438-447, 454-460, 515-516, 576).

In conclusion, despite her contentions to the contrary, the ALJ did not impugn Mayberry's character or state that she was untruthful; instead, the ALJ simply weighed the evidence in the record[9] to determine whether it supported Mayberry's subjective symptoms. (Tr. 47-52). Thus, the ALJ's analysis of Mayberry's subjective symptoms, even if it speaks in terms of "credibility" as described in SSR 96-7p, employed the correct process and evaluated the correct factors under either ruling. (Tr. 47-52).[10] The Court, therefore, finds no basis for remand.

## CONCLUSION

Considering the record as a whole, the Court concludes that proper legal standards were adhered to and the Commissioner's decision is supported by substantial evidence. Accordingly, it is the **RECOMMENDATION** of this Court that the Plaintiff's Motion for Summary Judgment

---

[9] The ALJ's decision reflects that she considered a wide variety of factors, including Mayberry's own reports of pain and limitations, the objective medical evidence in the record, Mayberry's medical treatment history, Mayberry's own reports – both written and through her in-person testimony at the disability hearing – of her daily activities, and the medical opinion evidence submitted by her treating physician, a state agency consultative examiner, and the non-examining state agency consultant.

[10] Ruling 16-3p cautions an ALJ against focusing on a whether a claimant is a truthful person and to instead focus on considering all the evidence in the record. SSR 16-3p, 2016 WL 1119029, at *10.

(Dkt. No. 17) be **DENIED**, that the Defendant's Motion for Summary Judgment (Dkt. No. 18, 19) be **GRANTED**, and that this action be **DISMISSED**.

The Clerk **SHALL** send a copy of this Report and Recommendation to the Parties who **SHALL** have until **December 14, 2016,** to have written objections, filed pursuant to 28 U.S.C. §636(b)(1)(C). Failure to file written objections within the prescribed time **SHALL** bar the Parties from attacking on appeal the factual findings and legal conclusions accepted by the District Judge, except upon grounds of plain error.

**DONE** at Galveston, Texas, this 28th day of November, 2016.

JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE